435 So.2d 321 (1983)
BEST WESTERN TIVOLI INN and Simms Enterprises, Inc., Appellants,
v.
DEPARTMENT OF TRANSPORTATION, Appellee.
No. AQ-209.
District Court of Appeal of Florida, First District.
July 13, 1983.
Gerald Holley, Chipley, for appellants.
Margaret-Ray Kemper, Charles G. Gardner and John H. Beck, Tallahassee, for appellee.
ROBERT P. SMITH, Jr., Chief Judge.
This is another of the recurring disputes over efforts by the Department of Transportation to control the siting of outdoor advertising signs adjacent to interstate highways in Florida, as required by 23 U.S.C. § 131(a) and chapter 479, Florida Statutes (1981). In this case, rejecting the recommended order of a hearing officer of the Division of Administrative Hearings, the secretary and head of the Department, Paul N. Pappas, entered a final order denying permits for four advertising signs that *322 appellants Best Western and Simms Enterprises erected on sites, apparently leased, adjacent to and within 600 feet of interstate highway 10 in an unincorporated area of Holmes County. The signs are oriented toward I-10 traffic and are located between a half-mile and a mile east or west of state road 79.
In section 120.57(1) proceedings the hearing officer entered an order recommending that the Department issue these permits because the billboards are sited on one or the other of two 300-foot strips, aggregating 75 acres, that were zoned "commercial" by Holmes County ordinances passed in August and November 1981. The board of county commissioners simultaneously amended the county's "Comprehensive Plan" for development, adopted a year earlier, to provide that "sufficient property along said Interstate 10 in the vicinity of its intersection with State Road 79, and any other North-South State Highways be zoned commercial so as to allow commercial buildings to be constructed in this area." This amendment replaced the "Comprehensive Plan's" original provision contemplating that "a strip of land 50 feet wide" along I-10, on either side of its interchanges with state roads 79 and 81, "be considered commercial, for the express purpose of allowing the business' [sic] of Holmes County to place signs along the side [of the] interstate highway, and be in conformance with the provisions of Chapter 479, Florida Statutes."
No other lands in unincorporated areas of Holmes County are zoned "commercial." No ordinance of Holmes County defines "commercial" zoning. The previous zoning of these 75 acres, if any, is not shown by this record, but a considerable portion is planted in crops and another portion is embedded in a fairly new residential subdivision.
The predicate for the Department's final action denying the permits is its finding that Holmes County's zoning action was "created primarily to permit outdoor advertising structures," Rule 14-10.05(6), Fla. Admin. Code, in order to evade the statutory bar of advertising signs "[w]ithin 600 feet of the nearest edge of the right of way of all portions of the Interstate System ... except as provided in 479.111 F.S." Section 479.111(2) authorizes signs "in commercial and industrial zoned areas."
The Department's Rule 14-10.05(6) provides in relevant part:
State and local zoning actions must be taken pursuant to the State's zoning enabling statute or constitutional authority and in accordance therewith. Action which is not a part of comprehensive zoning and is created primarily to permit outdoor advertising structures is not recognized as zoning for outdoor advertising control purposes and permits will not be issued for signs in those areas. (Emphasis added.)
Owing to federal highway financing and the state's corresponding duty to enforce federal standards regulating billboard advertising along the federal highway system, see, e.g., LaPoint Outdoor Advertising v. Florida Department of Transportation, 398 So.2d 1370 (Fla. 1981) and sec. 479.02, Fla. Stat. (1981), the Department's Rule 14-10.05(6), above quoted, is copied exactly from 23 C.F.R. § 750.708(b). Subsection (d) of the federal regulation further exemplifies, in a way not directly relevant here, the impact of federal standards upon local zoning for "commercial" uses that might otherwise include billboards:
A zone in which limited commercial or industrial activities are permitted as an incident to other primary land uses is not considered to be a commercial or industrial zone for outdoor advertising control purposes. [23 C.F.R. § 750.708(d).]
The issue, then, is whether Holmes County's "commercial" zoning of these lands requires the Department to issue permits for billboards there, advertising off-site businesses, or whether, to the contrary, permits should be withheld because the zoning was "not a part of comprehensive zoning and is created primarily to permit outdoor advertising structures."
The hearing officer recommended permitting for these signs upon finding that *323 Holmes County's "Comprehensive Plan," as particularly amended contemporaneously with the "commercial" zoning of these properties, expressly contemplates "commercial" zoning at the intersection of I-10 and S.R. 79, "so as to allow commercial buildings to be constructed in this area." Then finding that the "current plan"  meaning the "Comprehensive Plan" as amended contemporaneously with the zoning changes  "is not primarily for the purpose of allowing outdoor advertising signs," the hearing officer went no further, but held:
Even if the evidence introduced indicated that the county zoned the area at this time for the primary purpose of allowing signs, the first part of the test is not met. Therefore, the Department cannot refuse to recognize the zoning for purposes of regulating outdoor advertising. (Emphasis added.)
The Department's final order, on the other hand, reads Rule 14-10.05(6) as prescribing alternative tests, either of which alone if satisfied disqualified the billboards for permitting:
The Hearing Officer concludes that zoning action must be such that it is both (a) not a part of comprehensive zoning, and (b) created primarily to permit outdoor advertising structures before the Department may refuse to recognize such action as zoning for outdoor advertising control purposes.
The Department takes the position that this rule was adopted to prevent the evasion of restrictions on outdoor advertising signs through zoning ordinances enacted for that purpose. If the word "and" in the phrase "Action which is not a part of comprehensive zoning and is created primarily to permit outdoor advertising ", when read in the usual conjunctive sense has the effect of defeating the purpose of the rule, then the word can and should be read as disjunctive. (82 C.J.S. Statutes, § 355), applying the principles of statutory construction to the interpretation of an administrative rule.
The Department's order then finds, upon a review of the evidence, that this zoning was accomplished "primarily to permit outdoor advertising structures," so disqualifying the billboards for permitting.
We are prepared to defer to any permissible interpretation an agency may place upon statutes in its charge, or upon its rules, though other interpretations may arguably be preferable. Department of Health and Rehabilitative Services v. Framat Realty, Inc., 407 So.2d 238, 241 (Fla. 1st DCA 1981); Department of Administration v. Nelson, 424 So.2d 852, 858 (Fla. 1st DCA 1982). Yet we cannot in conscience accept as permissible the Department's division of its rule standard, by reading "and" as meaning "or," into two alternative standards.
The flaw in the Department's order is not so much that it neglects schoolish distinctions between conjunctives and disjunctives; those distinctions would not require the Department to read a twofold standard, for example, into a rule reading, "Action which is not a part of comprehensive zoning and action which is created primarily to permit outdoor advertising structures is not recognized." The fault in the Department's order is rather that, by interposing the bifurcating "or," the Department creates an alternative standard  "Action which is not a part of comprehensive zoning ... is not recognized"  that is incoherent in terms of chapter 479. Nothing in that chapter, nor in its incorporated federal statutes and regulations, places the Department of Transportation in judgment over local land use regulation that is not "created primarily to permit outdoor advertising structures." Stated another way, the Department has no monitoring powers over local government's zoning, by "comprehensive planning" or otherwise, that is deemed incomplete or faulty for reasons not associated with a purpose "primarily to permit outdoor advertising."
For the same reason, then, the Department cannot be excused from addressing that part of its rule which requires, as a predicate for nonrecognition of "commercial" *324 zoning, that such action was "not a part of comprehensive zoning." If the Department wishes to excuse itself from coping with the entirety of its rule as plainly written, the Department must amend its rule, meanwhile granting these permits, or it must cite special circumstances, peculiar to this case, that in the Department's view justify its departure from the rule. Sec. 120.68(12)(b), Fla. Stat. (1981). Mr. Pappas' order makes no effort to justify dispensing in this instance with Rule 14-10.05(6), apparently recognizing that to jettison the standard here would soon destroy the rule through the repetition of like circumstances. It appears, rather, that Mr. Pappas has been induced to manipulate the language of the rule in much the same way as the Department contends Holmes County manipulated its zoning to legitimate these billboards. This sort of reasoning hardly qualifies as "deliberations appropriate to `the dignity and burden of [Mr. Pappas'] own responsibility.'" Key Haven Associated Enterprises, Inc. v. Board of Trustees, etc., 400 So.2d 66, 73 (Fla. 1st DCA 1981), aff'd in part and rev'd in part, 427 So.2d 153 (Fla. 1982).
In interpreting its own Rule 14-10.05(6) to render certain key language inapplicable, therefore, the Department's order "lack[s] convincing wisdom" and fails "to cope with the hearing officer's adverse commentary." McDonald v. Department of Banking and Finance, 346 So.2d 569, 583 (Fla. 1st DCA 1977). Yet the nature of the evidence in this record  which we purposefully do not discuss at this time  induces us to remand the case to the Department after vacating its order, see McDonald, 346 So.2d at 586, so that the Department head may on this record enter a new final order either granting or denying these permits for sound reasons.
The new final order will be entered and evidenced to the court by certified copy within 45 days after this decision becomes final. Should that order grant the permits, appellants will forthwith dismiss this appeal. Should the order deny the permits, the parties will file additional briefs on the merits within 30 days after the filing here of that order.
The Department's order is VACATED and the case is REMANDED.
WENTWORTH and ZEHMER, JJ., concur.