OVERLAND OUTDOOR ADVERTISING COMPANY, INC.,
Plaintiff-Respondent,

v.

MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION,
Defendant-Appellant.

No. 15186.

Missouri Court of Appeals,
Southern District,
Division Two.

April 29, 1988.

Rich Tiemeyer, Chief Counsel, Jefferson City, Judy L. Curran, Dist. Counsel, Springfield, for defendant-appellant.

John S. Pletz, Venters, Pletz, Toppins & Reed, Jefferson City, for plaintiff-respondent.

MAUS, Judge.

The Missouri Highway and Transportation Commission (Commission) issued a notice to Overland Outdoor Advertising, Inc. (Overland) to remove a nonconforming sign because "[t]he size of the sign has been changed as prohibited by 7 CSR 10–6.-060(3)(C)." Following administrative review of that notice the Commission ordered Overland to remove that sign. Upon judicial review, the Circuit Court of Butler County found the order was not supported by competent and substantial evidence and reversed the same. The Commission appeals.

The review before the Commission was upon a stipulation of facts. The relevant parts of that stipulation are summarized as follows. The sign in question is a nonconforming sign. Overland's application, dated March 20, 1978, for biennial inspection of that sign stated it was 10 feet in height by 20 feet in width. Sometime after October 15, 1977, the sign was replaced. "The replacement consisted of the removal of the old face and the placement of a 10′ by 24′ panel and a 2′ by 24′ strip adjoining the bottom of the larger panel. This 2′ by 24′ strip contains the words 'Kennett–Cape–Crystal City–St. Louis.' " The larger panel advertises Centerre Bank. Leon Smithee, the Chief Operating Officer of Overland, if called to testify would state that the dimensions on the application referred to were in error and the sign had always been 10 feet by 24 feet. He would further testify "that within the outdoor advertising industry, 'apron' means the portion of the structure beneath the main face of the billboard with an apron-like shape, and that in his opinion the 2′ by 24′ strip in question is an apron."

7 CSR 10–6.060(3)(C) provides: "Size. The size or area of a sign shall not be increased or decreased after the date the sign becomes a nonconforming sign." Overland contends the size of the sign in question was not increased for two reasons. First, the testimony of Smithee establishes the sign had always been 10 feet by 24 feet. Second, the 2–foot by 24–foot strip was not a sign but an apron. It is not necessary to consider the first reason and whether or not Overland's application for inspection stating the sign was 10 feet by 20 feet was competent and substantial evidence of that fact.

Overland's second reason is patently without merit. In support of that reason Overland cites that portion of § 226.540(2)(a) which reads as follows: "The maximum area for any one sign shall be one thousand two hundred square feet with a maximum height of thirty feet and a maximum length of sixty feet, inclusive of border and trim but excluding the base or apron, supports, and other structural members." It argues that since the additional strip is an apron and not a part of the sign, the size of the sign was not increased by the addition of the strip.

The statute is to be construed in the light of the purposes the legislature intended to accomplish by its enactment. *Gannett Outdoor Company of Kansas City v. Missouri Highway and Transportation Commission,* 710 S.W.2d 504 (Mo.App.1986). One of those purposes was to insure continued federal highway funding in Missouri. *Hulshof v. Missouri Highway and Transportation Commission,* 737 S.W.2d 726 (Mo. banc 1987).

The meaning of "apron" as used in § 226.540 must be construed in context. As so construed it is part of an exclusion which is modified by the language of that sentence "other structural members." When considered in context, the term apron clearly refers to a structural member and not to advertising. Cf. *State ex rel. Foltz v. Ahr,* 666 S.W.2d 777 (Mo.App.1983). Further, the obvious intent of the section is to limit the size of an advertising sign. Cf. *Piros Signs v. Missouri Highway and Transportation Commission,* 708 S.W.2d 709 (Mo.App.1986). The section would be rendered meaningless by a construction which would permit the addition of a strip of unregulated width which also bears advertising.

**454**

If there could be any doubt concerning the meaning of the term apron, that doubt is removed by definitions. *St. Louis Country Club v. Administrative Hearing Commission*, 657 S.W.2d 614 (Mo. banc 1983). Overland does not question the validity of 7 CSR 10–6.015(19) which provides: "'Sign' means outdoor advertising as defined by section 226.510(3) RSMo." Section 226.510(3) provides:

> 'Outdoor advertising', an outdoor sign, display, device, figure, painting, drawing, message, plaque, poster, billboard, or other thing designed, intended or used to advertise or inform, any part of the advertising or information contents of which is visible from any point of the traveled ways of the interstate or primary systems; . . . .

This is substantially the same definition of "sign" as found in 23 CFR 750.102(m) and 23 CFR 750.703(1). The strip was clearly "a thing designed, intended or used to advertise or inform" and is a sign within the meaning of the applicable state and federal regulations. The meaning is clear and cannot be changed by the testimony of Smithee.

The function of this court is to review the Commission's findings and decision and not the judgment of the trial court. *Hulshof.* The action of the Commission was supported by competent and substantial evidence. Because the nonconforming sign was increased in size in violation of 7 CSR 10–6.060(3)(C) removal of the sign is mandated. *Hulshof.* The judgment of the circuit court is reversed and the order of the Commission is affirmed.

PREWITT, P.J., and FLANIGAN, J., concur.

HOGAN, J., not participating.